SALINA M. KANAI #8096
Federal Public Defender
District of Hawaii

MAX J. MIZONO #10245
Assistant Federal Defender
300 Ala Moana Boulevard, Suite 7104
Honolulu, Hawaii 96850
Telephone: (808) 541-2521
Facsimile: (808) 541-3545
E-Mail:   max_mizono@fd.org

Attorney for Defendant
JACOB LYMAN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Cr. No. 12-01256 DKW |
| | ) | |
| Plaintiff, | ) | Defendant Jacob Lyman's Supplemental |
| | ) | Briefing |
| vs. | ) | |
| | ) | Exhibits A – F |
| JACOB LYMAN, | ) | |
| | ) | Certificate of Service |
| Defendant. | ) | |
| | ) | |

**Defendant Jacob Lyman's Supplemental Briefing**

Defendant JACOB LYMAN, by and through counsel, hereby respectfully

submits this Supplemental Briefing ("Briefing") in Support of his Motion for

Compassionate Release ("Motion"), *see* ECF No. 60, in response to the Court's

June 8, 2021 Minute Order. *See* ECF No. 76.

1. Section 3582(c)(1)(A)(i) vests this Court with broad discretion to grant a defendant's motion seeking a sentencing reduction. Absent an applicable policy statement, the statute provides that this Court may grant compassionate release, or any other sentence reduction, "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that … extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. §3582(c)(1)(A)(i). The statute thus mandates an inquiry into the totality of the circumstances, guided by §3553(a)'s factors, under which this Court is required "to consider *any* … reason for release that a defendant might raise." *Aruda*, 993 F.3d at 801 (quoting *United States v. McCoy*, 981 F.3d 271, 284 (CA4 2020) (quoting *United States v. Brooker*, 976 F.3d 228, 230 (CA2 2020))) (emphasis retained by the Ninth Circuit); *see also United States v. McGee*, 992 F.3d 1035, 1045 (CA10 2021); *United States v. Gunn*, 980 F.3d 1178, 1181 (CA7 2020) ("[d]istrict judges must operate under the statutory criteria—extraordinary and compelling reasons—subject to deferential review" (quotation marks omitted)); *United States v. Jones*, 980 F.3d 1098, 1111 (CA6 2020) ("federal judges … have full discretion") and at 1113 (district courts must "consider[] all the defendant's evidence and arguments"); *Brooker*, 976 F.3d at 230 and at 237 ("a district court's discretion in this area … is broad").

2. There are a number of reasons why this Court should exercise its discretion under *Aruda* to reject §1B1.13 and its commentary. One is that the Sentencing Commission exceeded its congressional remit in promulgating them. Congress directed the Commission to "describe," not define, what a court "should," not must (nor must not), consider extraordinary and compelling. 28 U.S.C. §994(t). Choosing "describe" over "define" and "should" over "must" indicates Congress intended that the Commission would illustratively "describe those characteristic or significant qualities or features that typically constitute extraordinary and compelling reasons," which could then serve as "guideposts," rather than adopt an exclusive definition that binds, limits, restricts, or confines this Court's discretion. *McGee*, 992 F.3d at 1044–1045. Section 1B1.13 and its Application Note 1 do not merely describe an illustrative list of what may be considered extraordinary and compelling. They set out to define a closed universe of narrow circumstances that excludes those falling outside that definition's ambit. The inconsistency between §994(t) and Application Note 1 is, thus, a sound reason to reject Application Note 1.

The closed framework that the guideline and its commentary erect is also inconsistent with the goals of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (Dec. 21, 2018). The FSA seeks "to expand the use of compassionate release." *United States v. Maumau*, 993 F.3d 821, 836 (CA10 2021). And one of

the FSA's "central goals" is "to increase transparency of compassionate release decisions." *United States v. Sams*, ___ Fed. App'x ___, ___, 2021 WL 840913, at *2 (CA11) (Mar. 5, 2021) (unpublished). Categorically excluding circumstances from consideration without explanation, as §1B1.13 and Application Note 1 do, does not comport with Congress's goals of expanding this Court's discretion and increasing transparency.

Section 1B1.13(2) provides another reason to reject the guideline. Subsection (2) requires this Court to deny relief whenever a defendant fails to establish that he poses no danger to any other person or the community. This non-dangerousness requirement *inverts* §3582(c)(1)(A)(i)'s priorities. The statute conspicuously requires a non-dangerousness finding in cases arising under a different provision, subsection (c)(1)(A)(ii), but *not* under subsection (c)(1)(A)(i). The statute thus contemplates cases in which there will be extraordinary and compelling reasons to release a defendant even though there may be some risk in doing so. The guideline, contrarily, requires the opposite outcome, denying relief due to a risk of danger, no matter how slight, even if there are extraordinary and compelling reasons to reduce the defendant's sentence under Application Note 1. *See, e.g., United States v. Prem*, 2021 WL 685175 (D. Haw.) (Feb. 22, 2021) (slip copy) (finding guideline binding, ruling there were extraordinary and compelling reasons under Application Note 1, but denying relief because the defendant failed

4

to prove non-dangerousness under §1B1.13(2)). This inversion of priorities provides another reason to reject this guideline in Mr. Lyman's case. *See Stinson v. United States*, 508 U.S. 36, 47 (1993) (statute controls over inconsistent guideline); *United States v. Palmer*, 183 F.3d 1014, 1018 (CA9 1999) (holding a statute that barred counting certain prior convictions controlled over an application note that allowed counting them, because when "the Sentencing Guidelines and [c]ongressional statutes are inconsistent, the statutes control").

    Another reason to reject the policy statement and its commentary is because Application Note 1(A)'s requirements—present infection, inability to self-care, and non-recovery prognosis—are inconsistent with the constitutional floor set in *Helling v. McKinney*, 509 U.S. 25 (1993). Under *McKinney*, inmates may not be subjected to "future harm" from "infectious maladies." *McKinney*, 509 U.S. at 33–34. The Eighth Amendment accordingly "require[s] a remedy" for "unsafe conditions," without "await[ing] a tragic event," such as the 234 inmate deaths we have seen already in BOP facilities, or the defendant himself contracting the malady. *McKinney*, 509 U.S. at 33–34. Application Note 1(A) thus unconstitutionally requires denying an inmate a remedy for being confined in unsafe conditions that expose him to COVID-19, because it purports only to allow for relief once he contracts COVID-19, gets so sick he cannot care for himself, and will not recover from it—a significantly higher standard than *McKinney* sets. *See*

5

USSG §1B1.13, comment. (n.1(A)). The statutory standard, unlike the guideline's framework, does not call upon this Court to violate the Eighth Amendment. This Court, therefore, should use its discretion and reject §1B1.13 and its commentary, instead of turning to them for whatever (mis)guidance they purport to offer.

    3.      Section 3582(c)(1)(A) directs this Court to "consider the factors set forth in section 3553(a)." Those factors are enumerated *after* §3553(a)'s parsimony clause, which governs the initial sentencing determination of selecting a sentence that is "sufficient, but not greater than necessary, to comply" with the goals of just punishment, deterrence, incapacitation, and rehabilitation. Section 3582(c)(1)(A)'s limited incorporation clause, which captures only the "factors" enumerated in §3553(a) rather than §3553(a) in its entirety, thus *excludes* §3553(a)'s parsimony clause. Section 3582(c)(1)(A) jettisons the parsimony clause because it repurposes §3553(a)'s factors for use in achieving an entirely different goal than parsimony. The goal in a §3582(c)(1)(A) sentence reduction proceeding is not parsimony, but compassion; specifically, the goal is to determine whether there are extraordinary and compelling reasons—*above and beyond* the parsimony that governed the initial imposition of the defendant's sentence—to reduce the defendant's sentence. This Court's review of §3553(a)'s factors may not, accordingly, be keyed to §3553(a)'s parsimony clause. Review of §3553(a)'s factors, rather, is focused on whether they evince extraordinary and compelling reasons to reduce that

6

previously parsimonious sentence. In other words, this Court's statutory duty at sentencing under §3553(a) is to impose a sentence sufficient but not greater than necessary to achieve the initial goals of sentencing, but its statutory duty under §3582(c)(1)(A)(i) is to determine if compassion requires setting aside that sentence because there are extraordinary and compelling reasons to do so.

This Court should also be mindful that considering circumstances in isolation from each other does not account for their totality. *See United States v. Arvizu*, 534 U.S. 266, 274 (2002) ("evaluation and rejection of … factors in isolation from each other does not take into account the 'totality of the circumstances'"). This Court, accordingly, may not simply dismiss seriatim the circumstances Mr. Lyman's case presents, without considering how they interact with each other or otherwise aggregate to support finding that his case presents extraordinary and compelling reasons to reduce his sentence, if not compassionately release him. For these reasons, as well as those discussed above, this Court would err in treating §3582(c)(1)(A)(i)'s open totality-of-the-circumstances standard, under which this Court has broad discretion to grant relief, as calling for the same inquiry that the closed framework defined by §1B1.13 and its commentary dictates, under which this Court has little, if any, discretion at all.

4. Since the filing of his Motion in July 2020, Mr. Lyman's health issues still include asthma, gout, obesity (263 pounds), hypertension, and hyperlipidemia.

*See* Exhibit A, at pp. 4, 5, 13, 16, 19, 20, 23, 39, 46 (affixed with BATES prefix LYMAN). All of these health issues individually, as well as collectively, constitute extraordinary and compelling reasons to compassionately release him. And though the BOP claims his prediabetes is "resolved," Mr. Lyman's medical records make clear that his A1C levels continue to fluctuate. *See* Exhibit A, at LYMAN_0012, 13, 15, 57, 61, 67, 69. Also, Mr. Lyman caught COVID-19, but despite his recovery, he reports that he has experienced multiple long-term side effects. *See* Exhibits B-E. Mr. Lyman's recovery from COVID-19 should not preclude this Court from granting him the relief he seeks. *See United States v. Grier*, Case No. 07-00209-SHR, ECF No. 93 at p. 6 (Md. Pa) (May 10, 2021) ("To the best of the court's knowledge, people that have contracted COVID-19 may be at risk for reinfection given the emergence of multiple variants of the virus and the unknown length of antibody protection,"). Neither should Mr. Lyman's refusal of the vaccine given the circumstances of his incarceration. *See United States v. Lum*, Case No. 18-00073-DKW, ECF No. 76, at p. 10, fn. 2 (D. Haw.) (Feb. 2, 2021).

5. The totality of circumstances and §3553(a) factors indeed support a sentence reduction in his case. Changes in pertinent sentencing law are amongst other circumstances that this Court can and should consider in evaluating the merits of Mr. Lyman's Motion. The disparity between a sentence imposed under abandoned sentencing mores and the sentence that a similarly situated defendant

would face under today's, more enlightened, sentencing mores sits comfortably within §3553(a)(6) ("the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct") and §3553(a)(2)(A) (the need to "provide just punishment for the offense"). Moreover, *Aruda*'s reliance on *McCoy*, *McGee*, and *Brooker*—and, especially, the Ninth Circuit's quotation and retention of emphasis on the duty to consider "*any …  reason*" a defendant advances, *Aruda*, 993 F.3d at 801—signals that the Ninth Circuit agrees a change in sentencing law can, and should, support reducing a defendant's overlong sentence. *See McGee*, 992 F.3d at 1046–1048 (district court wrongly did not consider changes in sentencing law); *McCoy*, 981 F.3d at 284–271 (district court properly considered changes in sentencing law); *Brooker*, 976 F.3d at 237–238 (recognizing discretion to consider changes in sentencing law); *United States v. Crisolo*, 2020 WL 6323720, at *5 (D. Haw.) (Oct. 28, 2020) (same). Nor does the non-retroactivity of such a change bar consideration of it. There is "nothing inconsistent about" Congress denying "automatic vacatur and resentencing of an entire class of sentences" but "empower[ing]" this Court "to relieve *some* defendants of those sentences on a case-by-case basis." *McCoy*, 981 F.3d at 286–287 (Fourth Circuit's emphasis); *see also McGee*, 992 F.3d at 1047 (agreeing that a congressional choice "not to afford relief to *all* defendants" did not

9

disallow "granting sentence reductions under §3582(c)(1)(A)(i) to *some* of those defendants" (Tenth Circuit's emphases)).

Here, under these circumstances, considering the global pandemic, Mr. Lyman's health issues and rehabilitation, as well as the intervening changes to the law, a significant reduction in his sentence is appropriate. Such changes in the law include the reduction of the applicable mandatory minimum sentence of 180 months based on his prior drug conviction, rather than 240-months, *see* 21 U.S.C. §841(b)(1)(A) (2020), and in addition, given Mr. Lyman's criminal history and the circumstances of his offense, the likelihood that Mr. Lyman would *also* be safety-valve eligible pursuant to 18 U.S.C. §3553(f) following the Ninth Circuit's decision in *United States v. Lopez*, 2021 WL _____, No. 19-50305 (CA9 May 21, 2021).

Indeed, as to the commission of his offense, Mr. Lyman did not engage in violence, act in a leadership capacity, nor use a firearm during its commission. Moreover, he has a relatively stable employment history and educational background, *see* PSR ¶51-52, has completed dozens of courses in the BOP in an effort to rehabilitate himself, *see* Exhibit F, and has the support of his family. *See* PSR ¶ 46. Accordingly, Mr. Lyman's behavior for the majority of the time during his incarceration demonstrates the deterrent component of this case pursuant to §3553(a)(2)(B) and (C), and portends his safe reintegration into the community

where his family awaits him. Under §3553(a)(2)(A), moreover, there is much merit to the proposition, especially so in these times, that as conditions get harsher, sentences should be shorter. *See, e.g., United States v. Spano,* 476 F.3d 476, 479 (7th Cir. 2007) (concluding that there is enough merit to this argument to allow a sentencing judge to take it into account). This Court should account for the harsher time Mr. Lyman has spent in custody during the pandemic with a reduction of his sentence in some fashion.

Finally, any additional dangerousness concerns can be further mitigated by substituting unserved imprisonment with supervised release, *see* 18 U.S.C. §3582(c)(1)(A) (the court "may impose a term of … supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment"), or by making home confinement a condition of a term of Mr. Lyman's supervised release. *See* 18 U.S.C. §§3583(d) and (e)(2); 18 U.S.C. §3563(b)(19); USSG §5F1.2; *United States v. Earl*, 73 F.3d 371 (9th Cir. 1995).

6. For these all of these reasons, the Court should grant his Motion.

DATED: Honolulu, Hawaii, June 21, 2021.

Respectfully submitted,

*/s/ Max J. Mizono*
MAX J. MIZONO
Attorney for Defendant
JACOB LYMAN
